UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 11-205-GWU

MISTY KILBURN, PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Misty Kilburn brought this action to obtain judicial review of an administrative denial decision on her applications for Child's Insurance Benefits (CIB) and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## CHILD'S DISABILITY INSURANCE

An individual who becomes disabled as defined by 42 U.S.C. § 423(d) before attaining the age of twenty-two, who is the dependent child of a person entitled to old age or disability insurance benefits or fully insured at the time of his/her death, and who is unmarried at the time of application, is entitled to CIB. 42 U.S.C. § 402(d)(1).

CIB benefits employ the same disability standards as are used to determine disability in adults. 42 U.S.C. § 423(d).

1

11-205  Misty Kilburn

**ADULT'S SUPPLEMENTAL SECURITY INCOME**

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

11-205  Misty Kilburn

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563

3

provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry

small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Kilburn, prior to the age of 22, suffered from impairments related to a seizure disorder. (Tr. 12). Despite the

plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of work with an inability to lift more than 30 pounds at a time, sit for more than two hours in an eight-hour day, an inability to more than occasionally climb ramps and stairs, an inability to ever climb ladders, ropes or scaffolds, a need to avoid exposure to unprotected heights and moving machinery, and an inability to work alone. (Tr. 13). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 15-16). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 15).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert Tina Stambaugh included such factors as one of Kilburn's age, education and vocational history, with no exertional restrictions, restricted by such non-exertional limitations as: (1) an inability to operate heavy machinery; (2) a need to avoid exposure to hazards such as machinery and unprotected heights; (3) an inability to more than occasionally climb ramps and stairs; and (4) an inability to ever climb ladders, ropes or scaffolds. (Tr. 39). In response, the witness identified such light exertional level jobs as inspector (128,000 national jobs) and hand packer (318,000 national jobs)

11-205 Misty Kilburn

as remaining available.[1]  (Tr. 40-41).  The ALJ later presented a hypothetical question including such restrictions as an inability to lift, push, pull and carry more than 30 pounds, stand or walk for six hours in an eight-hour day in intervals of 30 minutes at a time, sit for more than two hours at a time in an eight-hour day, a need to avoid exposure to unprotected heights and heavy machinery and an inability to drive or work alone. (Tr. 41).  Stambaugh testified that the previously cited light level jobs could still be performed but with a reduction in numbers of approximately 50 percent. (Tr. 41-42).  Therefore, assuming that the vocational factors considered by Stambaugh fairly characterized the plaintiff's condition prior to the age of 22, she could not be considered to be totally disabled.

      The hypothetical factors fairly characterized Kilburn's physical condition.  The only physical restrictions indicated by Dr. Timothy Gregg, a non-examining medical reviewer, were an inability to ever climb ladders, ropes and scaffolds, an inability to more than occasionally climb ramps and stairs and a need to avoid exposure to hazards such as machinery and heights.  (Tr. 320-327).  These restrictions were presented to the vocational expert.  The staff at the Commission for Children with Special Health Care Needs, a treating source, did not identify the existence of more severe physical restrictions than those found by the ALJ.  (Tr. 284-311, 328-378).

---

[1] The witness also identified a number of medium level positions but these would not be consistent with ALJ's ultimate finding that the plaintiff was restricted from lifting over 30 pounds.  (Tr. 40).

The plaintiff herself testified that she could lift up to 30 pounds and could sit for two hours at a time. (Tr. 32). She denied limitations with regard to bending, stooping, squatting and using her hands. (Tr. 31-32). The ALJ's findings were consistent with this testimony. Therefore, substantial evidence supports the administrative denial decision.

Dr. Roy Varghese, a treating physician at Mary Breckinridge Healthcare, noted Kilburn's problem with seizures and opined that she would be unable to perform sustained work activity with her hands, perform sustained clerical work standing for six to eight hours, do sustained lifting and carrying for six to eight hours, perform lifting and carrying of items weighing more than 10 pounds, driving a motor car, standing and working with the arms and hands, operating hand and/or foot controls, relating to co-workers and dealing with work stress. (Tr. 421). These are far more severe restrictions than those found by the ALJ. When these limitations were presented to the vocational expert, she could not cite any jobs which would remain available. (Tr. 41).

The ALJ noted a number of good reasons for rejecting the opinion of Dr. Varghese. The ALJ found that while the doctor indicated that frequent seizures were the basis for the limitations, the medical record revealed long periods of time, sometimes over two years, where no seizure activity was reported. (Tr. 14). Kilburn herself testified at the March, 2010 hearing that she had not had a seizure since December of 2008. (Tr. 31). At the time of this December, 2008 seizure, the plaintiff

8

was reported to have had her last seizure the previous June. (Tr. 396). The ALJ opined that many of the noted restrictions did not appear to have a close relationship to a seizure disorder. (Tr. 14). Dr. Varghese was a specialist in internal medicine rather than neurology, and the ALJ thought that this was another factor to give less weight to the opinion. (Id.). Finally, many of the doctor's limitations, such as his prohibition on lifting and carrying or performing work activity with the hands, were contradicted by the claimant's own testimony in which she reported being able to lift up to 30 pounds and have no difficulty using her hands. (Tr. 14, 32). An ALJ does not need to give controlling weight to the opinion of a treating physician where it is contradicted by the plaintiff's own testimony. Warner v. Commissioner of Social Security, 375 F.3d 387, 391 (6th Cir. 2004). Therefore, the ALJ acted properly in rejecting the opinion of Dr. Varghese.

The record reveals that Kilburn was also diagnosed with mitral valve prolapse by Dr. Jacqueline Noonan in September of 2006. (Tr. 287). The ALJ considered this impairment but concluded that it was not "severe." (Tr. 13). The plaintiff asserts that this finding was erroneous. However, as noted by the ALJ, Dr. Noonan imposed no functional limitations in connection with the condition. (Tr. 13, 287). The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Therefore, the court finds no error.

11-205  Misty Kilburn

Kilburn also asserts the ALJ erred by failing to consider whether she could meet the duration requirements for substantial gainful activity. The plaintiff cites the Ninth Circuit Court of Appeals case of Gatliff v. Commissioner of Social Security, 172 F.3d 690 (9th Cir. 1999). However, in Gatliff, the record contained considerable evidence that the claimant would not be able to maintain employment more than a couple of months and the ALJ had even acknowledged this fact. Gatliff, 172 F.3d at 692. The record in the current action does not establish that the plaintiff could not maintain employment.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 11th day of May, 2012.

Signed By:
G. Wix Unthank
United States Senior Judge